UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:06CV-246-H

CHARLES W. JONES, SR., *et al*                                                                          PLAINTIFFS

V.

GLOBAL INFORMATION GROUP, INC., *et al*.                                                 DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Charles W. Jones Jr. ("Jones Jr.") and his father Charles W. Jones, Sr. ("Jones Sr."), have brought a defamation action against Defendants, North American Security Solutions, Inc. ("NASS") and its President and Chief Executive Officer, Michael P. Spencer.[1]  Defendants have moved to dismiss on the grounds that the alleged defamation is subject to the absolute privilege for statements made in relation to a state administrative proceeding.  Plaintiffs say that the privilege does not apply because the administrative agency lacked jurisdiction.  For the reasons that follow, the Court concludes that in our circumstances the agency's purported lack of jurisdiction does not nullify the absolute privilege.  Therefore, the privilege applies and the action for defamation cannot proceed.

I.

In spring of 2005 and while an employee of Toyota Motor Manufacturing Kentucky, Inc. ("TMMK"), Jones Jr. was interrogated by Spencer and Harry Tullis ("Tullis"), employees of

---

[1] The original complaint also contained a claim against Global Information Group, Inc. ("Global") for violation of the Stored Communications Act, 18 U.S.C. § 2701 (2006).  Global has been terminated as a party by an Order Granting Motion for Entry of Default, so this Court need not address the claim.

NASS, who were private investigators hired by TMMK. Spencer and Tullis continued their investigation and subsequently interrogated Jones Sr. Neither Spencer, Tullis, nor NASS were licensed in Kentucky to perform private investigations. On June 16, 2005, Jones Jr. mailed a letter to the Board of Licensure for Private Investigators (the "Board") complaining about the interviews conducted by Spencer and Tullis. On June 24, 2005, Jones Jr. executed a complaint form and acknowledgment, attaching the June 16th correspondence outlining the substance of the complaint. That same day, June 24, 2005, the Board licensed Defendants as private investigators in Kentucky. Later, the Board wrote NASS requesting a response to Jones Jr.'s complaint.

On August 29, 2005, Spencer responded on behalf of NASS to Jones Jr.'s complaint. In the letter, Spencer explained that TMMK had hired NASS to conduct an investigation into suspected theft and/or fraud at its Georgetown, Kentucky plant. During the investigation, a Toyota employee had told NASS investigators that Jones Jr. had been removing equipment and property from Toyota and wrongfully moving it to his warehouse in Louisville, Kentucky. As part of its investigation, NASS employees Spencer and Tullis interviewed Jones Sr. and accompanied him to his warehouse in Louisville, Kentucky. Spencer further explained that it appeared that over a million dollars may have been stolen from Toyota and that he was informed by Toyota personnel that the FBI was investigating the matter.

On September 1, 2005, the Board dismissed Jones Jr.'s complaint against NASS. This lawsuit followed.

II.

Plaintiffs contend that the statements in the letter from Spencer to the Board in response

2

to Jones Jr.'s complaint constitute defamation. In Kentucky, four elements are necessary to establish a claim for defamation: (1) a defamatory statement (2) about the plaintiff (3) communicated to a third person (*i.e.*, published) (4) resulting in injury to the plaintiff's reputation. *Marcus & Millichap Real Estate Investment Brokerage Co. v. Skeeters*, 395 F.Supp.2d 541, 553 (W.D. Ky. 2005) (citing *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 273 (Ky. App. 1981)).

Certain communications are privileged and not deemed defamatory because of the occasion upon which they are made. *Yancey v. Commonwealth*, 122 S.W. 123, 125 (Ky. 1909). "Statements in pleadings filed in judicial proceedings are absolutely privileged when material, pertinent, and relevant to the subject under inquiry, though it is claimed that they are false and alleged with malice." *Schmitt v. Mann*, 163 S.W.2d 281, 283 (Ky. 1942) (holding that an affidavit filed in a judicial proceeding was absolutely privileged because it was material, pertinent, and relevant to the subject matter of the proceedings). The privilege, which applies to parties, witnesses, attorneys, judicial officers, jurors, and others, also covers statements made preliminary to but in anticipation of litigation. *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1126 (6th Cir. 1990) (citing *Restatement (Second) of Torts* §§ 585-89 at 244-51). The issue here, therefore, is whether the absolute privilege applies to the statements in Spencer's letter.

The Kentucky Supreme Court has extended the privilege to statements related to administrative proceedings, stating that "there seems to be no distinction as to the application of the rule, where sought to be applied when publication is of a strictly judicial or executive proceeding, and of proceedings in a body executive or administrative in nature; a quasi judicial

3

body." *Begley v. Louisville Times Co.*, 115 S.W.2d 345, 349 (Ky. 1938). The *Begley* Court quoted with favor the *Restatement (Second) of Torts* § 1056, which affords the privilege to "organizations which are by law authorized to perform public duties such, for example, as a medical society or a bar association, charged with authority to license practitioners." *Begley*, 115 S.W.2d at 349. The court also cited a prior case in which a city real estate commission was an administrative body charged with the exercise of quasi judicial powers, and statements in its reports and findings were therefore privileged. *See McAlister & Co. v. Jenkins*, 284 S.W. 88 (Ky. 1926). The court in *McAlister* noted that "similar quasi-judicial bodies, or persons exercising such functions have been adjudged to be entitled to the absolute privilege, such as, inquiries and complaints having for their purpose the disbarment of attorneys, whether the proceedings take place in court or not. . ." *Id.* at 91.

Like a real estate commission, medical society, or bar society, the Board of Licensure for Private Investigators is an administrative body charged with quasi-judicial powers. Established in 2002, the Board administers and enforces the provisions of the Kentucky Private Investigators Act, Ky. Rev. Stat. Ann. § 329A, and evaluates the qualifications of applicants for licensure. The Board has the power to enforce the Act by suspending or revoking licenses, imposing supervisory or probationary conditions upon licenses, imposing administrative disciplinary fines, or issuing written admonishments or reprimands. Ky. Rev. Stat. Ann. § 329A.025(g) (2006). Upon receipt of a complaint of licensee wrongdoing, the Board may investigate the allegations after allowing the licensee the opportunity to respond. Ky. Rev. Stat. Ann. § 329A.060 (2006).

Plaintiffs make two arguments that the privilege does not apply here. Neither is convincing. First, Plaintiffs argue that the privilege cannot apply because the Board does not

4

have jurisdiction over Defendants since they were not licensees. This argument was concocted after the fact, as jurisdiction was not even an issue in the proceeding; the Board dismissed the complaint after Defendants were granted licenses. That being said, whether the Board ultimately lacked jurisdiction is irrelevant to the application of the privilege. The Board has explicit authority to enforce the provisions of the Kentucky Private Investigators Licensing Act, which requires a license to hold oneself out to the public as a private investigator. At the very least, the Board must conduct proceedings to determine its jurisdiction in any particular case. Here, Plaintiff actually initiated the complaint before the Board. Spencer's letter, which the Board solicited, was a material, pertinent, and relevant response to the matter under inquiry, that is, whether Defendants' had been operating as private investigators without a license. As such, the letter was written "in relation to" an administrative hearing and is covered by the absolute privilege.

  Second, Plaintiffs argue that this Court should deny Defendants' Motion to Dismiss as a matter of public policy. Since Defendants were operating as private investigators without a license, the argument goes, they should not be afforded protection from civil liability for defamatory statements. However, the privilege does not hinge upon the ultimate guilt or innocence of a charged party. If that were the case, criminal defendants who are found guilty and civil defendants who have committed a wrong would not be afforded the privilege. Public policy actually weighs in favor of upholding the privilege, to encourage parties in judicial and quasi-judicial administrative proceedings to speak freely. The doctrine of privileged communications rests upon sound public policy "which looks to the free and unfettered administration of justice, though, as an incidental result, it may, in some instances, afford an

immunity to the evil-disposed and malignant slanderer." *Sargent & Lundy*, 916 F.2d at 1126 (quoting *Schmitt*, 163 S.W.2d at 284).

Plaintiffs' amended complaint contains two additional causes of action. The parties should meet and agree upon a litigation and discovery schedule. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion to dismiss is SUSTAINED and Plaintiffs' defamation claim is DISMISSED WITH PREJUDICE.

This is not a final order.

cc: Counsel of Record