**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE**

CHARLES W. JONES, JR.                                                                              PLAINTIFF

V.                                                                                  Civil Action No. 3:06-00246-JDM

GLOBAL INFORMATION GROUP, INC., ET AL.                                            DEFENDANTS

**MEMORANDUM OPINION**

There are several pending motions currently before the court in this matter. Toyota Motor Manufacturing Kentucky, Inc. ("Toyota"), one of the defendants, has filed a motion to dismiss plaintiff's second amended complaint. None of the other defendants have joined in Toyota's request, but two of the other defendants, North American Security Solutions ("NASS") and Michael Spencer, one of its employees, have filed a motion for summary judgment. That motion, along with plaintiff's motion for partial summary judgment against Toyota and NASS, will be addressed by the court in separate opinions and orders entered concurrently with this one.

The court has considered Toyota's motion to dismiss, the responses thereto, and has heard oral argument of counsel. For the reasons stated herein, the court finds that the motion should be granted with respect to all of plaintiff's claims against Toyota.

**I.**

Described in the light most favorable to Mr. Jones, the relevant facts are as follows. Mr. Jones is a former employee of Toyota who, while still employed at Toyota, assisted his father in operating a warehouse in Louisville, Kentucky. The elder Jones's company owned the

warehouse, which Toyota leased and used to store some of its equipment.  At some point during the business relationship, Toyota conducted an investigation into allegations of vendor kickbacks that led it to become concerned that the lease arrangement violated its conflict of interest policy. Accordingly, Toyota instructed the company it hired to investigate the kickback allegations, North American Security Solutions, to expand its investigation to include the lease arrangement and the Messrs. Jones.

Mr. Jones alleges that NASS, through Mr. Spencer and other associates, conducted a constant surveillance of him "in multiple vehicles, every day around the clock" for approximately three months, during which time they followed Mr. Jones on public and private streets and in public and private buildings and other places, stole and searched through his garbage, and used "illegal monitoring devices" to record Mr. Jones's personal and telephonic conversations, all of which allegedly caused him "serious and extreme emotional pain and suffering."  Toyota denies authorizing or condoning any improper or unduly invasive investigative techniques, but admits that it provided NASS with Mr. Jones's cellular telephone number to aid the investigation.

Mr. Jones asserts that NASS supplied his telephone number to Robert Reichert of ASAP Investigations, Inc., who then asked another company, Global Information Group, Inc., to obtain Mr. Jones's confidential account information via the internet, which Global did.  Not long afterward, Mr. Jones was fired and not long after that, he initiated this lawsuit.

Mr. Jones's first complaint, in which he and his father were named plaintiffs, was filed in the Southern District of Indiana on January 20, 2006, named only Global, NASS and Mr. Spencer as defendants, and included only two causes of action: that Global violated the Stored Wire and Electronic Communications and Transactional Records Access Act ("SECTRA"), 18

U.S.C. § 2701, *et seq.*, and that NASS and Mr. Spencer defamed the younger Mr. Jones. After the case was transferred to the Western District of Kentucky, the Messrs. Jones filed a first amended complaint. That amended complaint added causes of action (intentional invasion of privacy and the intentional infliction of emotional distress), but no new defendants. The court promptly dismissed the defamation claim, but allowed the others to proceed. Fourteen months later, Mr. Jones tendered his second amended complaint, in which his father is no longer listed as a plaintiff, but in which Toyota, A.S.A.P. Investigations, Inc. ("ASAP"), and three individual defendants were added.[1] Of the newly-added defendants, only Toyota accepted service. The summonses were returned unexecuted as to ASAP and the three individual defendants.

Toyota promptly filed a motion to dismiss Mr. Jones's second amended complaint. In its motion, Toyota asserts that Mr. Jones's claims that Toyota is liable under SECTRA fail because SECTRA does not support a claim for secondary liability and because the claim is untimely. Toyota also asserts that Mr. Jones's allegations do not support claims against it for invasion of privacy, or the tort of outrage (intentional infliction of emotional distress).

## II.

When evaluating a Rule 12(b)(6) motion, the court must "construe the complaint in the light most favorable to the nonmoving party and accept all well-pleaded factual allegations as true to determine whether the moving party is entitled to judgment as a matter of law. *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir.2007); *see also* " *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) ("[W]hen ruling on a defendant's motion to

---

[1] In his second amended complaint, plaintiff also included a claim of defamation against NASS and Mr. Spencer only. The court is unsure why, because that claim was dismissed by Judge John G. Heyburn II on December 12, 2006, fourteen months before Mr. Jones tendered his second amended complaint. Regardless, although that claims is included in the document filed by Mr. Jones, it is no longer a viable cause of action in this litigation.

dismiss, a judge must accept as true all of the factual allegations contained in the complaint."). Accordingly, the court must assume that the facts are as Mr. Jones alleged in his complaint. *Gunasekera v. Irwin*, 551 F.3d 461, 466 -467 (6th Cir. 2009). That being said, and while the court's analysis primarily focuses on the complaint, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint ... may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir.2001).

### III.

The court is of the opinion that Toyota is correct that Mr. Jones has failed to state viable claims against it. All three of the claims – conspiracy to violate SECTRA, conspiracy to invade Mr. Jones's privacy, and the tort of outrage – simply are not viable as a matter of law, or are not viable as presented in Mr. Jones's second amended complaint. The court will discuss each claim more fully in turn.

**A.     Conspiracy to Violate SECTRA**

The Stored Wire and Electronic Communications and Transactional Records Access Act, 18 U.S.C. § 2701, *et seq.,* makes it a crime to "intentionally access[ing] without authorization a facility through which an electronic communication service is provided." 18 U.S.C. § 2701(a)(1). Although section 2701 discusses only criminal prosecution, a separate section permits civil enforcement of the statue by persons "aggrieved by any violation of this chapter in which the conduct constitution the violation is engaged in with a knowing or intentional state of mind." 18 U.S.C. § 2707(a).

Mr. Jones has alleged that his cell phone records were intentionally accessed via the internet without his consent or authorization. The court will accept that as true. The problem for Mr. Jones in the context of Toyota's motion to dismiss, however, is that the only company and

persons he alleges "intentionally accessed" his cell phone records are Global, Ms. Misner, and Mr. Herzog. The most that can be said of the other defendants based on the allegations pled by Mr. Jones is that they aided and abetted the actual violators by conspiring to violate the statue that they did not directly violate themselves, and therefore have secondary liability. Toyota only gave Mr. Jones's cell phone number to NASS and Mr. Spencer. They, in turn, gave his number to Mr. Reichert of A.S.A.P. Investigations, who then asked Global and its employees to use their resources to obtain the records.

Toyota asserts that the law does not support a claim for secondary liability under SECTRA. The court agrees. Although there is no Supreme Court or Sixth Circuit precedent directly on point, the court notes that federal courts typically decline to create secondary liability not specified by statute. *See, e.g., Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 176 (1994). The Supreme Court has often noted that when Congress wishes to impose aiding and abetting liability "it has little trouble in doing so" expressly. *See id.* (quoting *Pinter v. Dahl,* 486 U.S. 622, 650 (1988)). In the statute at issue, it is a crime to "intentionally access" a persons records stored online. 18 U.S.C. § 2701(a). There is no mention of those who conspire to violate the statute, or who merely provide the information necessary for others to do so.

As succinctly stated by the eminent Judge Posner of the Seventh Circuit: "[s]o statutory silence on the subject of secondary liability means there is none," *Boim v. Holy Land Foundation for Relief and Development*, 549 F.3d 685, 689 (2008)(en banc); and since Congress did not criminalize the actions of aiding and abetting violations of 18 U.S.C. § 2701 as part of that statute, and § 2707 authorize awards of damages to private parties but does not mention aiders and abettors or other secondary actors, this court will not infer secondary civil liability pursuant

to 18 U.S.C. § 2707, *see id.*,[2] and will dismiss plaintiff's SECTRA claim against Toyota

**B.     Invasion of Mr. Jones's Privacy**

As with his federal claim under SECTRA, Mr. Jones's invasion of privacy claim is one of secondary liability.  In his response, Mr. Jones asserts otherwise, arguing that Toyota's actions in disclosing Mr. Jones's cell phone number constitute a direct invasion of privacy, and its decision to request an investigation of Mr. Jones by NASS and Mr. Spencer makes it liable as a conspirator for any of their tortious conduct.

Before revisiting the facts as alleged, however, the applicable standard for stating a claim for invasion of privacy should be mentioned.  Fortunately, both Toyota and Mr. Jones agree upon elements of that standard.  In Kentucky, to establish the tort of invasion of privacy a plaintiff must prove: (1) an intentional intrusion by the defendant (2) into a matter the plaintiff has a right to keep private (3) that is highly offensive to a reasonable person.  *See Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808, 822 (W.D. Ky. 2003)(Heyburn, J.).  This standard, of course, pertains only to allegations of direct liability, because it mandates proof of an intentional direct act (*i.e.*, an intrusion).  To the court's knowledge, there is no mention among Kentucky's published cases of tort liability for conspiracy to invade a person's privacy, and Mr. Jones's counsel has not directed the court's attention to any such cases it might have overlooked.

Now to the facts alleged.  Plaintiff's recitation of the applicable facts has two discrete but not formally delineated sections.  The first, paragraphs one through twenty, describes the nature of the investigation conducted by NASS and Mr. Spencer and thus putatively provides the factual predicate for Mr. Jones's common law claims of invasion of privacy claim and

---

[2]Because this court has analyzed the substance of Mr. Jones's claim against Toyota under SECTRA, and determined that no cause of action exists, there is no need to address Toyota's assertion that any such claim, if viable, would be barred by the applicable statue of limitations.

intentional infliction of emotional distress. The second, paragraphs twenty-four through thirty-one, is most fairly read as intended to support Mr. Jones's allegations of a SECTRA violation. The court has reached this conclusion because, in between these two sections and providing a summary of the former and a break between the two, are paragraphs twenty-one through twenty-three which state, *inter alia*:

    a.    "By conducting an investigation in the manner set forth above, it was reasonable foreseeable that the actions would and did violate Plaintiff's right to privacy by subjecting Plaintiff to harassment and intimidation, invading Plaintiff's seclusion, solitude and private affairs ...." (Paragraph 21)

    b.    "As a further proximate cause of the actions of the Defendants, the Plaintiff has suffered and will continue to suffer both physical and emotional pain and suffering." (Paragraph 22)

    c.    "The actions of the Defendants NASS and Spencer were carried out willfully, wantonly and maliciously ..." (Paragraph 23)

In the paragraphs that precede these summary paragraphs, the actions *specifically* complained of were taken by NASS and Mr. Spencer during the course of their surveillance. In paragraph thirteen, Mr. Jones states that "in Spring of 2005, an investigation into the Plaintiff was initiated by the Defendants NASS and Spencer at the direction of Toyota," but the only mention in the second amended complaint of a discrete objectionable action directly taken by Toyota is in paragraph 30, in which Mr. Jones states: "Toyota ... disclosed Plaintiff's cell-phone number to NASS for the express purpose of obtaining Plaintiff's cell-phone records." This latter allegation falls squarely in the context of the factual recitations most fairly read as intending to support plaintiff's federal cause of action, however, namely that of the improper accessing of his cell phone records via the internet. Accordingly, and contrary to his assertions, the court is of the opinion that Mr. Jones has not adequately pled facts that would support a cause of action for

Toyota's direct invasion of his right to privacy.

As noted, *supra*, the court must accept all *well-pleaded* factual allegations as true to determine whether the moving party is entitled to judgment as a matter of law. *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir.2007). Plaintiff's common law claims now require the court to wrestle with the boundaries of what constitute "well pleaded factual allegations."

In *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007), the Supreme Court stated that in order to survive a Rule 12(b)(6) motion, the nonmoving party must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.... Factual allegations must be enough to raise a right to relief above the speculative level." Not long thereafter, however, the Supreme Court cited *Twombly* in support of the well-established principle that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (quoting *Twombly*, 127 S.Ct. at 1964). So, given these seemingly contradictory guideposts, what is a trial court to do?

The Sixth Circuit has stated "we read the *Twombly* and *Erickson* decisions in conjunction with one another when reviewing a district court's decision to grant a motion to dismiss for failure to state a claim." *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295-96 (6th Cir.2008). That is all well and good, but "[c]ourts in and out of the Sixth Circuit have identified uncertainty regarding the scope of *Twombly* and have indicated that its holding is likely limited to expensive, complicated litigation like that considered in *Twombly*." *Id.* at 296 n. 1 (citing

-8-

cases raising this uncertainty in the Sixth and Second Circuits); *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 503 n. 6 (6th Cir.2008) ("*Twombly* itself suggests that its holding may be limited to cases likely to produce 'sprawling, costly, and hugely time-consuming' litigation." (quoting *Twombly*, 127 S.Ct. at 1973 n. 6)). This case is not likely "to produce sprawling, costly, and hugely time-consuming litigation" in the fashion of *Twombly,* but neither is it a one-claim slip and fall case either. Rather, it is somewhere in between.

Plaintiff has provided enough to satisfy the *Erikson* "short and plain statement" requirement, but his structuring of his factual recitation, coupled with his identification of multiple corporate and individual defendants he accuses of running afoul of both federal and Kentucky common law, arguably merits something more akin to the more exacting *Twombly* standard. Even if Toyota directed NASS and Spencer to conduct an investigation of Mr. Jones, that allegation, standing alone, does not support a claim of invasion of privacy. There is no allegation that Toyota requested or even condoned the nature of the surveillance allegedly conducted by NASS and Mr. Spencer. Moreover, the court does not believe that a reasonable juror would deem an employer's decision to investigate an employee suspected of receiving improper vendor kickbacks to be "highly offensive." The method of the investigation might be, of course, but the decision itself, which is all that Toyota is accused of, is not.

As for Toyota's alleged disclosure of Mr. Jones's cell phone number for the express purpose of obtaining his cell phone records, the court has already noted that this particular allegation appears to be intended to be a factual predicate for plaintiff's SECTRA claim, rather than for the invasion of privacy claim. In his response to Toyota's motion to dismiss, however, and in his own motion for partial summary judgment (to be discussed in greater detail in a separate memorandum opinion), Mr. Jones asserts that the disclosure, by virtue of being a

SECTRA violation, constitutes a *per se* invasion of his privacy. Because there is no SECTRA violation, there can be no *per se* invasion of his privacy based on this allegation.

Accordingly, the court will dismiss Mr. Jones's invasion of privacy claim against Toyota.

## C.     Intentional Infliction of Emotional Distress

In Kentucky, the elements of a claim of intentional infliction of emotional distress are: (1) the wrongdoer's conduct must be intentional or reckless; (2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; (3) the must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress must be severe. *See, e.g., Kroger Co. v. Wilgruber,* 920 S.W.2d 61, 65 (Ky. 1996). Even viewed most in the light most favorable to Mr. Jones, the allegations of wrongdoing are that Toyota asked NASS and Mr. Spencer to investigate him for suspected employee fraud and that it provided NASS and Spencer his cell phone number in order to obtain his cell phone records.  These actions are most fairly characterized as those that would be, at most, distressing to a reasonable person. Without minimizing Mr. Jones's experience, the court nevertheless observes that Toyota's actions are not the sort of conduct recognized as so offensive, so truly outrageous, so violative of standards of decency and morality that they could bring a reasonable person "to his knees" and therefore warrant recovery for the tort of outrage. *See, e.g., Osborne v. Payne*, 31 S.W.3d 911, 914 (Ky. 2000)(citing *Wilgruber, supra*). Had NASS and Spencer moved to dismiss this claim, the court would be more inclined to allow the claim to survive initial dismissal in favor of more developed discovery, as they are the ones who allegedly intentionally engaged in the allegedly overly intrusive surveillance. Toyota is the movant, however, and absent more a more detailed description of shockingly abusive acts committed directly by Toyota the law simply does not support Mr. Jones's remaining claim

-11-

against it.

**IV.**

For the reason stated herein, the court will enter a separate order granting Toyota's motion to dismiss Mr. Jones's claims against it.

DATE:

cc: counsel of record