# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

CHARLES W. JONES, JR.                                                                                         PLAINTIFF

V.                                                                                              Civil Action No. 3:06-00246-JDM

GLOBAL INFORMATION GROUP, INC., ET AL.                                                       DEFENDANTS

## MEMORANDUM OPINION

There are several pending motions currently before the court in this matter, but the one presently at issue is the motion for summary judgment filed by North American Security Solutions, Inc. ("NASS") and Michael P. Spencer.[1]  After filing his motion for summary judgment, however, Mr. Spencer filed for bankruptcy protection in the United States Bankruptcy Court for the Southern District of Ohio.  Pursuant to 11 U.S.C. § 362(a) an automatic stay of proceedings against Mr. Spencer is thus in effect.  Accordingly, the court will, by separate order, administratively remand Mr. Spencer's request for summary judgment for resolution following any lifting of the stay.  For the reasons stated herein, however, the court will grant in part and deny in part NASS's motion.

## I.

As in the court's evaluation of Toyota's motion to dismiss, the court must evaluate the relevant facts of this case in the light most favorable to Mr. Jones.  Accordingly, the court will repeat here the relevant facts that are set forth in its memorandum opinion discussing Toyota's

---

[1] The other two motions are Toyota's motion to dismiss plaintiff's second amended complaint (docket no. 84) and plaintiff's motion for partial summary judgment (docket no. 112).

motion to dismiss, but will supplement its recitation and evaluation of the facts as appropriate for its consideration of NASS's motion for summary judgment.

Mr. Jones is a former employee of Toyota who, while still employed at Toyota, assisted his father in operating a warehouse in Louisville, Kentucky. The elder Jones's company owned the warehouse, which Toyota leased and used to store some of its equipment. At some point during the business relationship, Toyota conducted an investigation into allegations of vendor kickbacks and possible employee theft that led it to become concerned that the lease arrangement violated its conflict of interest policy. Accordingly, Toyota instructed the company it hired to investigate the allegations, North American Security Solutions, to expand its investigation to include the lease arrangement and the Messrs. Jones.

Mr. Jones alleges that NASS, through Mr. Spencer and other associates, conducted a constant surveillance of him "in multiple vehicles, every day around the clock" for approximately three months, during which time they followed Mr. Jones on public and private streets and in public and private buildings and other places, videotaped him, searched through his garbage, and used "illegal monitoring devices" to record Mr. Jones's personal and telephonic conversations, all of which allegedly caused him "serious and extreme emotional pain and suffering." NASS admits that it was hired to conduct a constant, lengthy surveillance, but denies trespassing, tapping into Mr. Jones's phones, or engaging in any other unlawful activities.

Mr. Jones asserts that NASS supplied his telephone number to Robert Reichert of ASAP Investigations, Inc., who then asked another company, Global Information Group, Inc., to obtain Mr. Jones's confidential account information via the internet, which Global did. Not long afterward, Mr. Jones was fired and not long after that, he initiated this lawsuit.

Mr. Jones's first complaint, in which he and his father were named plaintiffs, was filed in

the Southern District of Indiana on January 20, 2006, named only Global, NASS and Mr. Spencer as defendants, and included only two causes of action: that Global violated the Stored Wire and Electronic Communications and Transactional Records Access Act ("SECTRA"), 18 U.S.C. § 2701, *et seq.*, and that NASS and Mr. Spencer defamed the younger Mr. Jones. After the case was transferred to the Western District of Kentucky, the Messrs. Jones filed a first amended complaint. That amended complaint added causes of action (intentional invasion of privacy and the intentional infliction of emotional distress), but no new defendants. The court promptly dismissed the defamation claim, but allowed the others to proceed. Fourteen months later, Mr. Jones tendered his second amended complaint, in which his father is no longer listed as a plaintiff, but in which Toyota, A.S.A.P. Investigations, Inc. ("ASAP"), and three individual defendants were added.[2] Of the newly-added defendants, only Toyota accepted service. The summonses were returned unexecuted as to ASAP and the three individual defendants.

## II.

NASS asserts that it is entitled to judgment in its favor of the three remaining claims against it: (1) a violation of SECTRA, (2) invasion of privacy, and (3) intentional infliction of emotional distress.

**A.   Plaintiff's Claim that NASS is Liable under SECTRA**

As the court discussed at length in its evaluation of plaintiff's claim against Toyota, there is no legal support for a claim of secondary liability under SECTRA. The Stored Wire and Electronic Communications and Transactional Records Access Act, 18 U.S.C. § 2701, *et seq.*,

---

[2]In his second amended complaint, plaintiff also included a claim of defamation against NASS and Mr. Spencer only. The court is unsure why, because that claim was dismissed by Judge John G. Heyburn II on December 12, 2006, fourteen months before Mr. Jones tendered his second amended complaint. Regardless, although that claims is included in the document filed by Mr. Jones, it is no longer a viable cause of action in this litigation.

makes it a crime to "intentionally access[ing] without authorization a facility through which an electronic communication service is provided." 18 U.S.C. § 2701(a)(1). Although section 2701 discusses only criminal prosecution, a separate section permits civil enforcement of the statue by persons "aggrieved by any violation of this chapter in which the conduct constitution the violation is engaged in with a knowing or intentional state of mind." 18 U.S.C. § 2707(a).

Although there is no Supreme Court or Sixth Circuit precedent directly on point, the court notes that federal courts typically decline to create secondary liability not specified by statute. *See, e.g., Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 176 (1994). The Supreme Court has often noted that when Congress wishes to impose aiding and abetting liability "it has little trouble in doing so" expressly. *See id.* (quoting *Pinter v. Dahl,* 486 U.S. 622, 650 (1988)). In the statute at issue, it is a crime to "intentionally access" a persons records stored online. 18 U.S.C. § 2701(a). There is no mention of those who conspire to violate the statute, or who merely provide the information necessary for others to do so.

As succinctly stated by the eminent Judge Posner of the Seventh Circuit: "[s]o statutory silence on the subject of secondary liability means there is none," *Boim v. Holy Land Foundation for Relief and Development*, 549 F.3d 685, 689 (2008)(en banc); and since Congress did not criminalize the actions of aiding and abetting violations of 18 U.S.C. § 2701 as part of that statute, and § 2707 authorize awards of damages to private parties but does not mention aiders and abettors or other secondary actors, this court will not infer secondary civil liability pursuant to 18 U.S.C. § 2707, *see id.*.

Nowhere in his pleadings does plaintiff allege, and there exists no evidence currently before the court, that NASS or any of its employees personally accessed his cell phone records via the internet. Rather, Mr. Jones alleges that NASS provided his phone number to A.S.A.P.

Investigations, Inc., which in turn provided the number to Global Information Group, Inc., whose employees allegedly obtained the records online. Because plaintiff has established no facts that would support a claim of direct liability under SECTRA summary judgment of that claim in NASS's favor is warranted and the claim will be dismissed.

**B.  Plaintiff's Claim that NASS is Liable for Invasion of Privacy**

In Kentucky, to establish the tort of invasion of privacy a plaintiff must prove: (1) an intentional intrusion by the defendant (2) into a matter the plaintiff has a right to keep private (3) that is highly offensive to a reasonable person. *See Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808, 822 (W.D. Ky. 2003)(Heyburn, J.). Plaintiff has presented only one claim of invasion of privacy, but asserts two separate sets of factual support for the claim.

The first is an invasion of privacy *per se* claim premised on the alleged SECTRA violation by NASS. Because plaintiff's SECTRA claim against NASS will be dismissed as a matter of law, there can be no invasion of privacy *per se* as Mr. Jones asserts.

The second set of facts that Mr. Jones proffers in support of his claim pertain to the actual surveillance conducted by NASS and its employees. Once sufficiently established, some of the evidence presented (such as investigators following Jones to and observing him in public places) might not lead a jury to conclude that his privacy had been invaded, legally speaking, but others (trespassing within the curtilage of his home to remove his garbage) might. The court expresses no opinion of Mr. Jones's likelihood of ultimate success on his invasion of privacy claim. It merely notes that, for the time being, it can withstand pre-trial adjudication and thus will not be dismissed.

**C.     Plaintiff's Claim that NASS is Liable for the Intentional Infliction of Emotional Distress**

In Kentucky, the elements of a claim of intentional infliction of emotional distress are: (1) the wrongdoer's conduct must be intentional or reckless; (2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; (3) the must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress must be severe. *See, e.g., Kroger Co. v. Wilgruber,* 920 S.W.2d 61, 65 (Ky. 1996). Viewed most in the light most favorable to Mr. Jones, the evidence presented thus far shows that NASS's employees conducted an aggressive, constant, and lengthy surveillance of Mr. Jones, including personally intruding on his visits with his daughter and girlfriend.

It is entirely possible (the court expresses no opinion as to whether it would be likely) that a jury would choose to characterize this particular type of surveillance as the sort of conduct recognized as so offensive, so truly outrageous, so violative of standards of decency and morality that it could bring a reasonable person "to his knees" and therefore warrant recovery for the tort of outrage. *See, e.g., Osborne v. Payne*, 31 S.W.3d 911, 914 (Ky. 2000)(citing *Wilgruber, supra*). Had NASS merely moved dismiss this claim pursuant to Fed. R. Civ. P. 12(b)(6), the court would be more inclined to allow the claim to survive in favor of more developed discovery, because Mr. Jones alleged in his complain that his distress was severe. NASS has filed a motion for summary judgment, however, and in response Mr. Jones has provided the court with no evidence of the necessary fourth element of a viable claim for intentional infliction of emotional distress beyond the conclusory and non-specific allegation in his complaint. There is nothing in plaintiff's response to NASS's motion for summary judgment to establish that Mr. Jones has been brought to his knees by NASS's conduct and suffered *severe* emotional distress. There is

no testimony from treating medical personnel, psychologists, therapists, or family members that Mr. Jones has suffered profound emotional distress.

Severe emotional distress is a necessary element of the cause of action for a reason. Without it, the "tort of outrage" would be merely the "tort of insult," and Kentucky's courts are clear that certain amount of insult and indignity is an unfortunate byproduct of modern life. *See, e.g., Wilgruber*, 920 S.W.2d at 65. Not everything that is arguably reprehensible is actionable. Only when an alleged tortfeasor's conduct is so thoroughly beyond the pale that it causes profound, identifiable emotional harm is recovery permitted in tort. Mr. Jones's emotional harm has not been articulated or identified beyond a conclusory allegation in his second amended complaint. Accordingly, pursuant to Fed. R. Civ. P. 56(e), Mr. Jones has not established that there is a genuine issue for trial.

## IV.

For the reason stated herein, the court will enter a separate order granting NASS's motion for summary judgment of plaintiff's claim under SECTRA and plaintiff's claim of intentional infliction of emotional distress. The court will deny NASS's request for summary judgment of plaintiff's invasion of privacy claim.

DATE:

cc: counsel of record